GORMAN v. BIRRELL et al.

No. 2345. Decided June 20, 1912 (125 Pac. 685).

MECHANICS' LIENS—ENFORCEMENT—LIABILITY OF OWNER. Where lessees, with the consent of the owner, employed a contractor to make alterations in the leased premises at their own expense, according to specifications furnished by the owner's architect, one performing work and furnishing materials for the alterations could not enforce a lien against the owner.

APPEAL from District Court, Third District; *Hon. Geo. G. Armstrong,* Judge.

Action by Patrick W. Gorman against A. H. Birrell and others.

Judgment for defendants. Plaintiff appeals.

AFFIRMED.

*Goodwin & Van Pelt* and *F. B. Scott* for appellant.

*Edwards & Ashton, Pierce, Critchlow & Barrette, Weber & Olson, Ed. McGurrin* and *James Ingebretsen* for respondents.

STRAUP, J.

This is an action to foreclose a mechanic's lien. The appeal involves only the issues between the plaintiff and the defendant Swallow. The case was tried to the court. The findings show: Swallow, in April, 1908, was the owner of the real estate in question, situated in Salt Lake City. On the 22d of that month he entered into a written contract with the Salt Lake Security & Trust Company to construct a three-story apartment house on the real estate at an agreed price of $31,500. The contract provided that no alterations should be made in the work except upon the written order of the architect. On the same day Swallow leased the real estate, together with the building to be erected thereon, to the defendants Birrell, Pratt, and Whittemore for a term of twelve years. The trust company subcontracted the construction of the building to the defendant Engdahl, who constructed the building in accordance with the contract. On the 1st day of October, when about all the exterior and much of the interior had been constructed, the lessees, then in possession of the land and premises, for their own benefit, and to improve the value of their leasehold, requested alterations to be made on the second floor of the building by subdividing

and increasing the number of suites. That involved additional bathrooms, toilets, plumbing, and other work. Swallow consented to the making of the changes, but upon the understanding and upon an agreement that the alterations were to be made at the cost and expense of the lessees, and without any liability on his part, or any charge against the property. He agreed to rebate $150 from the rentals due under the lease, which was thereafter allowed. Thereupon the lessees, upon their own account and for their own interest under the lease, procured the architect of the building to prepare for them separate plans, blueprints, and specifications for the alterations, and upon their own responsibility as lessees contracted for and made the alterations. Swallow did not make them nor cause them to be made; nor did he enter into any agreement, verbally or otherwise, with the plaintiff, who alleged that he did the plumbing for the alterations under an agreement entered into with Swallow and the lessees, according to the plans and specifications prepared by the architect, to do the plumbing, or to perform any service or furnish any material at the instance or request of Swallow or any agent authorized by him. Upon these findings judgment was entered in favor of Swallow.

The plaintiff appeals. He contends that the findings are not supported by and are against the evidence. The evidence, without conflict, shows that the plaintiff rendered services and furnished material for the plumbing of the building in pursuance of the original contract entered into between Swallow and the trust company and the subcontract between Engdahl and the trust company. He was paid for that. The evidence also shows, without dispute, that the plaintiff rendered services and furnished material in doing the plumbing for the alterations referred to in the findings. His evidence, however, leaves the question much in doubt and uncertain at whose instance and request, and the circumstances under which, he rendered the services and furnished the material. It seems he had considerable difficulty in alleging what the facts were, or what his theory was, in that regard. In his filed notice of lien he averred "that the said indebtedness

accrued," and that he "furnished said material to and was employed by A. H. Birrell," one of the lessees, "and C. B. Onderdonk *et al.*, who were the agents of George Swallow, the owner" of the premises, "under a verbal contract made between the said A. H. Birrell, C. B. Onderdonk *et al.*," and the plaintiff. Who were meant by *"et al."* is not made to appear. In the original complaint filed in the cause he alleged that Swallow let a contract to the trust company to construct the building according to the original plans and specifications "upon premises leased to Birrell, Pratt, and Whittemore;" that the trust company sublet to Engdahl, who constructed the building; that during the construction of it "Swallow made and entered into a contract with the said lessees for the construction of additional parts of said premises; that said lessees thereupon let said contract" to Engdahl, who "sublet said contract to the plaintiff in so far as the plumbing was concerned" for $400; and "that the contract price agreed upon to be paid by said lessees to the said defendant O. M. Engdahl was $590, including the said plumbing." In his amended complaint he alleged the same facts, except that Swallow made a contract with the lessees for the construction "of the addition to the building, by the terms of which said lessees were to construct such addition and said Swallow was to pay for same by allowances on the rent to be paid by said lessees, and that the lessees entered into a contract with Engdahl for the construction of the addition, and that Engdahl sublet the plumbing" to the plaintiff. In his second amended complaint he alleged that it was mutually agreed between Swallow and the lessees that the original plans and specifications of the building should be modified and changed, and that the proposed changes were approved by the architect and superintendent on the building and the agent of Swallow; that thereafter the plaintiff "entered into a verbal contract with the defendant Swallow" and the lessees "to do the plumbing required by the proposed changes according to the plans, blueprints, and specifications prepared by" the architect "for the sum of $400."

The evidence, without substantial conflict, shows that after the original contract was let by Swallow, and while the apartments were in the process of construction, the alterations were made at the instance and request of the lessees and for their benefit. Of course, before they were made Swallow was consulted, who, in turn, consulted the architect to ascertain if the alterations could be made without injury to the building. Finding that to be so, he consented. It then was agreed that the lessees, and not Swallow, should make the alterations at their own expense; Swallow agreeing, however, to allow them $200 on the rent. Thereupon the lessees entered into a written agreement with Engdahl to make the alterations according to prepared plans and specifications, and by the terms of which the lessees agreed "to stand the expense of such change and Engdahl to hold" the lessees "for all costs in connection with said change;" the price agreed upon being $590. There is much evidence in the record to show that, while Swallow consented to the alterations and was about the premises and saw the changes being made, still the evidence, without substantial conflict, shows that the lessees, and not he, agreed to make and pay for them, and that they, and not he, let the contract for that purpose. As before observed, the plaintiff by his evidence left it very uncertain whether he did the work and furnished the material in the making of the alterations at the instance and request of Engdahl or the lessees, or both. His evidence, however, does not show that he did so at the instance and request of Swallow, or under any agreement with him or any authorized agent. In his original and first amended complaints he alleged that he did the work under a contract with Engdahl, and in the second amended complaint, the complaint presenting the triable issues, under a verbal contract with Swallow and the lessees. Finally, in his brief, we are told that "the evidence makes a clear case of a contract for the plumbing made by the plaintiff with the agent of the defendant Swallow authorized and ratified by Swallow, and an *implied* promise of Swallow to pay plaintiff for the same when completed." We are then told that "the agent" referred to, was

Onderdonk, the architect, and that it was he who asked plaintiff's foreman "to bid on the plans;" that the foreman did so, and submitted to Onderdonk a bid of $400; and "that Swallow approved the bid and authorized the foreman to do the work." There is evidence to show that the architect prepared plans and specifications for the alterations, not for Swallow, but for the lessees. We have not been referred to any evidence that Swallow requested or authorized him to procure bids, or that the architect did so, nor, in our judgment, is there any substantial evidence to justify the conclusion that "Swallow approved the bid or authorized" the plaintiff or his foreman "to do the work." Such approval and authorization are largely deduced from the facts that Swallow permitted the alterations to be made and was present and about the apartments and saw them being made.

We think that the findings are justified by the evidence, and that the judgment should be affirmed, with costs. Such is the order.

FRICK, C. J., and McCARTY, J., concur.